UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY PYNE,

        Petitioner,

                                         Case No. 2:17-cv-10849

v.

                                         HON. MARK A. GOLDSMITH

SHIRLEE HARRY,

        Respondent.

_____/

**OPINION & ORDER
(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (Dkt. 1), (2) DENYING A
CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO
APPEAL IN FORMA PAUPERIS**

      Petitioner Jeffrey Pyne filed a pro se petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 (Dkt. 1), challenging his Oakland Circuit Court jury trial conviction of second-

degree murder. Mich. Comp. Laws § 750.317. Petitioner was sentenced to 20-to-60 years'

imprisonment.

      The petition raises four claims: (1) the trial court erroneously allowed the admission of

improper character, opinion, and irrelevant other-acts evidence, (2) Petitioner was denied the

effective assistance of trial counsel, (3) the trial court erroneously failed to limit the admission of

character and other-acts evidence when Petitioner did not present a self-defense claim, and (4) the

trial court erroneously failed to grant Petitioner's motion for a directed verdict as to the original

charge of first-degree murder. For the reasons stated below, the Court denies the petition, denies

a certificate of appealability, but grants permission to proceed on appeal in forma pauperis.

## I.  BACKGROUND

      This Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).   See

Wagner v. Smith, 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant's conviction arises from the bludgeoning and stabbing death of his 51-year-old mother, Ruth Pyne (Ruth), at their house in Highland Township, Michigan, on May 27, 2011. Evidence indicated that defendant and his mother had a tumultuous relationship, fueled by his mother's failure to take her medication for bipolar disorder. The prosecutor's theory at trial was that defendant had become increasingly frustrated about living with his mother's mental illness, and that other events in the months preceding the crime contributed to defendant's emotional state that led to the violent attack.

> On the afternoon of May 27, 2011, at approximately 2:30 p.m., defendant's father returned home and found Ruth lying in a pool of blood in the garage. He contacted the police. Ruth had a large wound on the back of her skull and multiple stab wounds on her neck. The front door was locked with a deadbolt and there were no signs of forced entry, theft, or a struggle inside the house. Bloodstains on the garage door indicated that the garage door was closed at the time of the incident. After finding Ruth's body, defendant's father summoned defendant, who was working at his job at an apple orchard. When defendant arrived home, he had bandages that covered blistering injuries on his hands. Defendant claimed that he received the injuries at work while handling a wooden pallet. The prosecutor theorized that defendant's injuries were inconsistent with his explanation and had instead resulted from repeatedly swinging the murder weapon. Defendant told the police that his mother was lying in her bed when he left home at 1:30 p.m. to perform yard work for someone before going to the orchard where he was scheduled to begin work at 3:00 p.m. The defense theory at trial was that defendant was not at home when Ruth was killed, and that there was no direct evidence connecting him to his mother's death.

People v. Pyne, 2015 WL 405723, at *1-2 (Mich. Ct. App. Jan. 29, 2015).

Following his conviction and sentence as indicated above, Petitioner filed a claim of appeal

in the Michigan Court of Appeals.    His appellate counsel filed a brief on appeal that raised two

claims:

> I. The trial court's failure to prevent, or to reasonably restrict, the prosecution's usage of improper character, opinion and non-relevant other-acts evidence—in a case where direct evidence of guilt was lacking and the proofs were comprised of inferential circumstantial evidence and opinions of witnesses—was an abuse of discretion which denied Pyne his constitutional rights to a fair trial and due process of law under the Sixth, Fifth, and Fourteenth Amendments, and Const. 1963, Art. 1, §§17 and 20, and further violative of MRE 403 and 404(a) and 404(b).

II. Pyne was denied his Sixth Amendment right to the effective assistance of counsel where counsel failed to present a substantial defense, failed to object to inadmissible hearsay, failed to object to improper prosecution argument, and opened the door to highly prejudicial opinion evidence.

Petitioner also filed a supplemental pro se brief, raising an additional two claims:

III. The trial court's failure to prevent or to reasonably restrict the prosecutor's use of improper and inadmissible victim character, opinion, and nonrelevant other-acts evidence was an abuse of discretion which denied defendant his constitutional rights to a fair trial and due process of law under the 14th Amendment, and was further violative of MRE 404(a).

IV. The trial court's failure to grant a motion for a directed verdict of acquittal in light of the lack of evidence of first-degree murder was a violation of the 14th Amendment and denied defendant a fair trial and due process of law.

The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion. Id. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as he raised in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. People v. Pyne, 866 N.W.2d 440 (Mich. 2015).

## II. STANDARD OF REVIEW

A federal court's review of constitutional claims raised by a state prisoner in a habeas action is curtailed by 28 U.S.C. § 2254(d)(1) if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16

(2003), quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003), quoting <u>Williams</u>, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011), quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington</u>, 562 U.S. at 103 (internal quotation omitted).

## III. ANALYSIS

### A. Evidentiary Claims

Petitioner asserts in his first and third claims that the trial court made a number of erroneous evidentiary rulings, and that the admission of other unobjected-to pieces of evidence rendered his trial fundamentally unfair, in violation of due process. Specifically, Petitioner claims that it was error to allow admission of the following: (1) the testimony of Petitioner's co-worker regarding the source of Petitioner's hand injuries, (2) the co-worker's testimony about what happened between Petitioner and his girlfriend, (3) the co-worker's testimony about Petitioner's alcohol use,

(4) the testimony of Petitioner's girlfriend about Petitioner's mental state prior to the murder and his "effortlessly" lying and cheating on her, (5) the opinion testimony of Petitioner's boss about the source of Petitioner's hand injuries, (6) the EMS and police officers' testimony regarding Petitioner's demeanor at the crime scene, (7) the police officers' opinions about conditions at the crime scene, and (8) opinion testimony regarding the victim's mental illness and prior attacks against Petitioner. The Court regroups these allegations as indicated below and finds that none of the claimed errors warrants relief.

The Sixth Circuit summarized the daunting standard of review for claims of evidentiary error as follows:

> With regard to evidentiary rulings, the standard for habeas relief is not easily met. "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." Coleman v. Mitchell, 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." Coleman v. Mitchell, 244 F.3d 533, 542 (6th Cir. 2001). Moreover, such rulings "are usually not to be questioned in a federal habeas corpus proceeding." Seymour v. Walker, 224 F.3d 542, 552 (6th Cir. 2000) (quoting Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir.1988)). Even if errors are made in the application of state law, "[such] errors . . . especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." Walker v. Engle, 703 F.2d 959, 962 (6th Cir.), cert. denied, 464 U.S. 962 (1983). If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003) (citing Coleman, 244 F.3d at 542). Importantly, however, as a general matter, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" Seymour, 224 F.3d at 552 (quoting Montana v. Egelhoff, 518 U.S. 37, 43 (1996)). Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause. Id.

Wilson v. Sheldon, 874 F.3d 470, 475-476 (6th Cir. 2017).

Here, Petitioner has failed to show that the trial court erred under state law, let alone show that any of the alleged errors were so egregious that they offended some principle of justice so

rooted in the traditions and conscience of our people as to be ranked as fundamental.

### 1. Lay Opinion Testimony Regarding Petitioner's Injuries

Petitioner challenges the opinion testimony of his co-worker and boss that the injuries on his hands were not caused by lifting the wooden pallet at work as Petitioner claimed in his statement to police.

The Michigan Court of Appeals rejected this allegation as follows:

> Defendant claimed that the injuries to his hand occurred at work when moving a wooden pallet. Cartwright, the market manager at the apple orchard where defendant was employed, had worked at the farm for 25 years and had thrown hundreds of pallets. He testified that, based on his experience, defendant's explanation about his injuries "didn't make sense" because he had never seen a pallet cause that type of injury. Bretti had worked at the orchard with defendant for three years and had handled pallets "[h]undreds of times" since 2009. Based on his experience, Bretti did not see any way a pallet would made that type of injury. Both witnesses based their opinions on their own perceptions of defendant's injuries and their years of personal experience handling pallets. The challenged opinions were not dependent on scientific expertise and were admissible pursuant to MRE 701. Further, the testimony was relevant to the credibility of defendant's claim that he injured his hands while handling a pallet, not from bludgeoning his mother. Defendant has not established a plain error in the admission of the lay opinion testimony.

Pyne, 2015 WL 405723, at *4.

For the reasons that follow, there was nothing fundamentally unfair about admitting the lay opinion of these two witnesses that Petitioner's injuries were not consistent with moving a wooden pallet.

At the scene of the crime and during his police interview Petitioner told the EMS workers and detectives that he hurt his hands when "a pallet fell and he grabbed the pallet."   11/16/2012 Tr. at 244, PageID.493 (Dkt. 7-6).   Color photographs of Petitioner's hands show what appear to be peeled blisters on the inside of his hands and thumbs.   See Photos, App'x A to Appellee's Brief on Appeal, PageID.1642-1644 (Dkt. 7-21).   The prosecutor's theory was that Petitioner

blistered his hands when he repeatedly struck the victim with an object such as the three-foot two-by-four that was missing from the garage.   11/19/2012 Tr. at 263, PageID.636 (Dkt. 7-7) (missing board); 12/11/2012 Tr. at 27, PageID.1225 (Dkt. 7-15) (wounds consistent with being hit by board); 12/12/2012 Tr. at 24-26, PageID.1264-1265 (Dkt. 7-16) (same).

To refute Petitioner's account of how he injured his hands the prosecutor elicited testimony from witnesses who worked with Petitioner that they had never seen similar injuries despite working with wooden pallets for years.   Nicholas Bretti testified that he was Petitioner's friend.  11/16/2012 Tr. at 74, PageID.408.   Bretti worked at the same orchard with Petitioner for about three years and had thrown pallets hundreds of times, but he had never suffered the type of injuries as seen in the photograph of Petitioner's hands.   Id. at 42-44, PageID.392-393.   Bretti testified that he even tried to reproduce the injury by handling the pallet in various different ways, but he was unable to do so.   Id. at 45-46, PageID.394.   Likewise, William Cartwright, Petitioner's boss, testified that he had worked at the orchard for twenty-five years, had thrown hundreds of pallets during that time, but had never seen injuries such as Petitioner's from handling a pallet.   Id. at 94-96, PageID.418-419.

The admission of this evidence did not render Petitioner's trial fundamentally unfair.   Lay opinion testimony is permitted where it is: (1) rationally based on the witness's perception, (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. United States v. Freeman, 730 F.3d 590, 595-596 (6th Cir. 2013).   The function of lay opinion testimony is to "describ[e] something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event."   Id. at 595.

7

The opinion testimony of Petitioner's co-workers was not based on scientific expertise but on their personal experiences in handling wooden pallets of type Petitioner claimed caused his injuries. While it is possible the jurors – like anyone who has ever performed manual work – would have familiarity with blisters and how they arise, the witnesses' familiarity with whether throwing a pallet might cause the blisters seen on Petitioner's hands was relevant and helpful in determining whether Petitioner's claim was plausible. Petitioner certainly has not identified any "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" that prevented the presentation of this lay opinion testimony to the jury. Seymour, 224 F.3d at 552.

### 2. Testimony Regarding Petitioner's Alcohol Use and Conduct towards His Former Girlfriend

Petitioner next asserts that the testimony from his co-worker and his former girlfriend that he effortlessly lied to her and her friends and family and that he cheated on her was overly prejudicial.

The Michigan Court of Appeals decided this claim against Petitioner as follows:

Defendant challenges the prosecutor's elicitation of testimony about the demise of defendant's relationship with his former girlfriend because of his cheating and lying, and his consumption of alcohol, essentially arguing that the evidence was not within the purview of MRE 404(b) because it did not demonstrate any similar acts of violence. Although MRE 404(b) provides examples of permissible uses of other acts evidence, the list is not exhaustive. People v. Watson, 245 Mich. App. 572, 576-577(2001). Contrary to defendant's assertions, the rule permits the admission of evidence of a defendant's prior acts for any relevant purpose that "'does not risk impermissible inferences of character to conduct.'" Id. at 576 (citation omitted). The challenged evidence was relevant to factual issues in this case and was not offered to show propensity.

"A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." People v. Cameron, 291 Mich. App. 599, 612 (2011). We agree with the prosecution that the challenged evidence was relevant to its theory that defendant began a "downward spiral" in the months preceding his mother's death, which culminated in a state of mind that led him to kill his mother.

The prosecutor theorized that although Ruth's mental illness presented a challenge for defendant, defendant had been an ideal boyfriend, employee, and friend before March 2011. The challenged testimony revealed that beginning in March 2011, within two months of his mother's death, defendant began to act differently around his girlfriend, friends, and coworkers. The prosecutor theorized that defendant became distraught after his girlfriend broke up with him, and that defendant's level of frustration was exasperated by his father deciding not to divorce his mother, causing defendant to ultimately take out his frustration and despair on his mother. The challenged evidence provided context for the jury to understand how defendant's mentality could have deteriorated to a point that would have caused him to violently attack his mother.

Further, we are not persuaded that the evidence should have been excluded under MRE 403. MRE 403 is not intended to exclude "damaging" evidence, because any relevant evidence will be damaging to some extent. People v. Mills, 450 Mich. 61, 75 (1995). Instead, under the balancing test of MRE 403, a court must first decide whether the evidence is unfairly prejudicial, and then "'weigh the probativeness or relevance of the evidence' against the unfair prejudice" to determine whether any prejudicial effect substantially outweighed the probative value of the evidence. Cameron, 291 Mich. App. 611 (citation omitted). Unfair prejudice exists where there is "'a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury'" or "'it would be inequitable to allow the proponent of the evidence to use it.'" Mills, 450 Mich. at 75-76 (citation omitted); see also People v. McGuffey, 251 Mich. App. 155, 163 (2002). In the second situation, the unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." Cameron, 291 Mich. App. 611 (quotation marks and citations omitted).

Although defendant asserts that the evidence is inherently prejudicial, we are not persuaded that the jury would not have been able to rationally weigh the evidence. Under the circumstances, the trial court's decision to allow the evidence did not fall outside the range of reasonable and principled outcomes, Feezel, 486 Mich. at 192, and its introduction did not constitute plain error, Carines, 460 Mich. at 752-753.

Pyne, 2015 WL 405723, at *3-4.

As with the previous claim, Petitioner has failed to demonstrate that the admission of the testimony regarding his deteriorating relationships was not only inadmissible, but that it was so prejudicial that it rendered his trial fundamentally unfair. The challenged evidence was relevant to explain why Petitioner, who by outward appearances was a model son, would be motivated to murder his mother. The challenged evidence consists of the observations of Nicholas Bretti, Will

Cartwright, Holly Freeman, and Tonia Moore, who indicated that in the months leading up to the murder Petitioner became sullen and withdrawn. Freeman testified that she broke off her romantic relationship with Petitioner after he cheated on her. In turn, Petitioner's co-worker and friend testified that this led to increase alcohol use. Significantly, these events occurred in the same timeframe that Petitioner learned his father would not be divorcing his mother. Freeman testified that Petitioner said he "couldn't take it anymore." 11/30/2012 Tr. at 89, PageID.1152 (Dkt. 7-13). When Freeman met with Petitioner after the break-up about a month prior to the murder, "he was miserable, he was depressed." Id. at 96, PageID.1155. The night after the murder, Petitioner called Freeman and according to her testimony he calmly told her that his mother was dead. Id. at 99, PageID.1157.

Petitioner asserts that the challenged evidence was improperly offered to show that Petitioner had a bad character. To the contrary, it was offered to explain Petitioner's motive to commit murder. The witnesses testified to Petitioner's deteriorating mental condition, Petitioner's feeling that he could no longer live with his mother, and concern for his little sister's safety from their mother. The admission of testimony regarding these witnesses' observations of Petitioner's mental state was not fundamentally unfair, because it was relevant to establish Petitioner's motive for the crime. See, e.g. Turner v. Romanowski, 2007 WL 2875250, *29 (E.D. Mich. Sept. 28, 2007).

### 3. Lay Opinion Testimony Regarding Petitioner's Demeanor

Petitioner similarly challenges the testimony of EMS workers and police officers who opined that Petitioner's reaction to hearing news that his mother was dead was unusual and that he appeared to feign crying and distress.

The Michigan Court of Appeals addressed and rejected the claim as follows:

Defendant further challenges the testimony of two responding EMS workers and three police witnesses, all of whom stated that defendant's reaction to the news of his mother's death appeared insincere. Each witness testified regarding his or her first-hand observation of defendant's behavior, and each witness explained why they concluded that defendant's reaction appeared feigned. Thus, each witness's opinion regarding defendant's demeanor was rationally based on his or her own interaction with and perception of defendant, and was not overly dependent on technical or specialized knowledge. Their testimony concerned defendant's demeanor, and how his reaction was inconsistent with their observations of other people receiving similar news. These opinions did not involve highly specialized knowledge, and were largely based on common sense. See McLaughlin, 258 Mich. App. at 658; see also People v. McReavy, 436 Mich. 197, 203 (1990) (a police officer may comment on a defendant's demeanor during an interview). Further, the testimony on the authenticity of defendant's actions helped explain why defendant became a person of suspicion. Consequently, defendant has failed to establish a plain error.

Pyne, 2015 WL 405723, at *5.

The admission of this evidence likewise did not deny Petitioner a fundamentally fair trial. One of the EMS workers, after seeing Petitioner's reaction to hearing the news of his mother's death, thought his reaction was inauthentic, or "a put on." 11/16/2012 Tr. at 242, PageID.492. She and her partner looked at each other in disbelief and she thought, "Really?" Id. A police detective likewise testified that Petitioner feigned crying and vomiting at the scene. Id. at 224, PageID.483. When at the police station, Petitioner was told that his mother had been murdered, the police officers thought he showed no emotion and again pretended to cry. Id. at 239, PageID.491. Evidence of this sort is probative of Petitioner's consciousness of guilt. See United States v Cody, 498 F.3d 582, 591-592 (6th Cir. 2007) (evidence regarding defendant's mental state and actions during stand-off with police admissible to show consciousness of guilt). The admission of witnesses' observations of Petitioner's actions and demeanor after the murder did not render his trial fundamentally unfair.

### 4. Lay Opinion Testimony Regarding Condition of Crime Scene

Petitioner next asserts that it was error for the trial court to admit the opinion evidence of

police officers that whoever murdered the victim had access to the house because the front door

was dead-bolted shut and the victim's body was positioned to block the only other exit in the

garage.   Petitioner also challenges an officer's testimony regarding the blood splatter found in the

garage.

The Michigan Court of Appeals rejected this claim on the merits as follows:

> Defendant also argues that the trial court plainly erred when it allowed police
> witnesses to give their opinions regarding the crime scene. Defendant specifically
> challenges a deputy's testimony about the presence of blood splatter. The deputy
> offered his opinion of what occurred based on his observations of the presence and
> location of the blood splatter. Defendant also challenges a detective's opinion that
> the perpetrator was someone who had access to the house, which was based on the
> officer's observations of certain aspects of the crime scene. Both officers had past
> experience in investigating homicide cases, and neither officer claimed that his
> opinion was supported by any specialized, technical, or scientific knowledge.
> Opinions of police officers who have not been qualified as experts are admissible
> under MRE 701 if they arise from the officers' observations, they are generally
> based on common sense, and they are not overly dependent upon scientific
> expertise. Richardson v. Rider Truck Rental, Inc, 213 Mich. App. 447, 455-456
> (1995); Oliver, 170 Mich. App. at 50. Because the officers' testimony was
> rationally based on their perceptions of the crime scene, and helpful to a clear
> understanding of their testimony and the determination of facts at issue, the
> testimony was admissible pursuant to MRE 701.

Pyne, 2015 WL 405723, at *5.

This claim is plainly without merit.   Again, Petitioner has failed to show a violation of

Rule 701 based on the admission of this lay opinion evidence, let alone an error that rendered his

trial fundamentally unfair.   As accurately stated by the state appellate court, an examination of

the crime scene revealed that the front door to the house was locked, and that the body of the victim

was lying in such a way that if the perpetrator had left through the garage door, one would have

expected blood to have been spread by the bottom of the door.   There was also no indication of

forced entry, robbery, or sexual assault.   The officers opined that it, therefore, appeared that

whoever murdered the victim had access to the house.   That opinion was based on their

experience, perceptions made at the crime scene, and common sense. Admission of this evidence did render Petitioner's trial fundamentally unfair.

### 5. Testimony Regarding the Victim's Mental Illness

Finally, Petitioner asserts that the trial court should not have allowed admission of evidence about the victim's mental illness and evidence about the incident where she attacked Petitioner. He asserts that such evidence was irrelevant where he did not claim self-defense.

The Michigan Court of Appeals rejected this claim in the merits as follows:

> From what we can discern, defendant argues that the trial court erred in allowing several witnesses to testify regarding Ruth's mental illness and prior violent attacks against defendant. Although defendant asserts that this evidence was not admissible under MRE 404(a), the mere fact that MRE 404(a)(2) is not applicable does not render the evidence inadmissible. It is well settled that "evidence that is admissible for one purpose does not become inadmissible because its use for a different purpose would be precluded." VanderVliet, 444 Mich. at 73. A jury is entitled to hear the complete story of a crime. People v. Aldrich, 246 Mich. App 101, 115 (2001); see also People v. Bostic, 110 Mich. App. 747, 749 (1981). The evidence of Ruth's mental illness and her connected violent attacks on defendant were relevant to defendant's state of mind and motive. The evidence explained why defendant would have been motivated to violently attack his mother. An understanding of the family dynamics that led up to Ruth's violent death was necessary to give the jury the "complete story." Defendant has failed to demonstrate a plain error that affected his substantial rights.

Pyne, 2015 WL 405723, at *8.

For the reasons stated by the state appellate court, this claim is completely devoid of merit. The prosecutor's theory of motive centered on the fact that the victim suffered from a mental illness that made life difficult for Petitioner and the rest of the family. The timing of the murder occurred a few months after Petitioner learned that his father would not divorce his mother, a situation that according to Petitioner's girlfriend he could no longer tolerate. The contested evidence was highly relevant to the prosecutor's theory of motive, and Petitioner's trial was not rendered unfair by its admission.

Petitioner has failed to demonstrate that any of the challenged evidentiary rulings violated his due process right to a fundamentally fair trial.

**B. Ineffective Assistance of Counsel**

Petitioner's second claim asserts that he was denied the effective assistance of counsel. He asserts that his trial attorney: (1) failed to object to several of the items discussed above, (2) opened the door to the opinion evidence of the police officers that Petitioner committed the crime, (3) failed to object to hearsay evidence regarding the board missing from the victim's garage, and (4) failed to call any witnesses in Petitioner's defense.

Ineffective-assistance claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. Id. at 687. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In habeas review, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, 105 (2011).

After reciting the controlling constitutional standard, the Michigan Court of Appeals rejected this claim on the merits as follows:

> Defendant argues that defense counsel was ineffective for failing to object to certain evidence discussed in section I, supra. As explained previously, the challenged evidence was not improper. Therefore, defense counsel's failure to object was not objectively unreasonable. Defendant also argues that defense counsel was ineffective for failing to object to police testimony that defendant's father told them that one or two boards were missing from the garage. However, defendant has failed

to brief the merits of his claim that this testimony was inadmissible. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." People v. Kelly, 231 Mich. App. 627, 640-641 (1998). Further, given the strong circumstantial evidence against defendant, he cannot demonstrate a reasonable probability that but for counsel's failure to object to the challenged evidence, the result of the proceeding would have been different. Consequently, defendant cannot establish a claim of ineffective assistance of counsel.

* * *

Defendant also argues that defense counsel was ineffective for failing to "follow through after his investigation," failing to call any witnesses, and failing to present a substantial defense. Defendant has not overcome the strong presumption that trial counsel's performance was within the range of reasonable professional conduct. Gioglio, 296 Mich. App. at 20. Counsel's decisions about what evidence to present and what witnesses to call are matters of trial strategy. People v. Rockey, 237 Mich. App. 74, 76 (1999). Counsel has wide discretion in matters of trial strategy. People v. Heft, 299 Mich. App. 69, 83 (2012). It is apparent that defense counsel's strategy was to emphasize problems with the prosecution's case. The record shows that any witnesses that defendant claimed to have had contact with at the time of the offense were called by the prosecution, and defense counsel had the opportunity to crossexamine those witnesses at length. Defendant has not shown that any additional effort by defense counsel would have produced witnesses who could have been helpful to the defense. Defendant does not identify any witnesses who he believes should have been called, and has given no indication that appellate counsel was aware of any witness who could have been helpful to the defense but was not called at trial. Because defendant has failed to substantiate his suggestion that any witnesses could have corroborated his claimed alibi or established that someone else committed the crime, and there is simply no evidence that any witnesses actually existed who could have assisted in the defense, defendant has failed to show any prejudice with regard to defense counsel's failure to further investigate or call any witnesses.

As the prosecution accurately observes, defense counsel's strategy was apparent throughout the trial. In his opening statement, defense counsel emphasized that no one knew who killed Ruth, that defendant was not present when Ruth was killed, and that there was no direct evidence that defendant committed the crime. During trial, defense counsel vigorously cross-examined witnesses to highlight that there was no direct evidence linking defendant to the crime. While defendant argues that defense counsel "opened the door" to officers elaborating on why they believed that he killed his mother, defense counsel made clear to the jury that the officers were only offering their "opinions" and that there was no direct evidence that defendant was guilty. Counsel's decisions about what questions to ask and what arguments to make generally constitute matters of trial strategy, Rockey, 237 Mich. App. at 76,

which this Court does not second-guess, <u>People v. Russell</u>, 297 Mich. App. 707, 716 (2012). Further, notwithstanding defense counsel's questions to the officers, the jury was already aware, based on the police investigation and the charge against defendant, that the investigating officers believed that defendant committed the crime. During closing argument, defense counsel noted that, in response to his cross-examination, a detective admitted that he was just offering his opinion that defendant committed the crime. Defense counsel further stated:

> And by the way, I wasn't asking a question I didn't know the answer to. I've known all along there's no proof in this case. I've also known that if anybody had any proof, they would have no problem answering in the affirmative and citing that proof. But nobody could. But it still took a little bit longer to show you. But he wasn't being straight with you.

In keeping with this apparent strategy, defense counsel continued to reiterate in closing argument that there was no direct evidence that defendant committed the crime. Counsel argued:

> When I rested the other day, it wasn't because I had a lack of witnesses, because I couldn't put up a month-long list of people, cumulative evidence showing nothing. I just wasn't going to waste your time. There's been no proof, I told you at the beginning in opening statements, there was no proof. It took a while for me to be able to show that to you, but you eventually saw it. And so that's why I rested.

> The prosecution, too, made a decision to jettison a number of their witnesses that you heard on their witness list. That's because their case eventually ran out of energy. It was cumulative and it wasn't going anywhere. It was time to wrap it up. So here we are now at closing and it's time to look at the case and understand what people's motivations were. The People's strategy in this case was to put up enough people early on to take pot shots at the defendant's character. They figured as long as they did that, as long as you didn't know there was no proof in the case, they could keep the case rolling, make you angry, make you feel emotion that eventually would enable you to find my client guilty, whether or not there was any proof. As I say, they ran out of time.

While defendant argues that the specific defense presented by counsel was not helpful, he does not indicate what different or additional strategy trial counsel should have pursued. To the extent that defendant relies on the fact that defense counsel's strategy was not successful, nothing in the record suggests that defense counsel's presentation of the defense was unreasonable or prejudicial. This Court will not substitute its judgment for that of counsel regarding matters of trial

strategy, nor will it assess counsel's competence with the benefit of hindsight. <u>Russell</u>, 297 Mich. App. at 716. "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." <u>People v. Stewart (On Remand)</u>, 219 Mich. App. 38, 42 (1996). Defendant has not established that he was denied the effective assistance of counsel at trial.

<u>Pyne</u>, 2015 WL 405723, at *6-8.

This decision did not unreasonably apply the clearly established Supreme Court standard. First, with respect to the failure to object to any of the allegedly improperly admitted evidence, counsel was not ineffective for failing to object because for the reasons stated above the testimony was properly admitted and any objection would have been denied.    See <u>Bradley v. Birkett</u>, 192 F. App'x 468, 475 (6th Cir. 2006).

Next, with respect to Petitioner's second and fourth allegations, the trial record clearly demonstrates defense counsel's reasonably competent trial strategy of asserting throughout the trial that the prosecution had not met its burden of proof.    With no direct evidence of Petitioner's guilt and little forensic evidence, the prosecution built its case entirely on circumstantial evidence. The defense strategy was to argue that the circumstantial evidence was not enough to prove beyond a reasonable doubt that Petitioner was the perpetrator of the murder.

As part of this defense, defense counsel highlighted the lack of direct evidence during the questioning of several of the investigating officers by asking them whether they knew who murdered the victim.    See 11/20/2012 Tr. at 65-66, PageID.673 (Dkt. 7-8); 11/27/2012 Tr. at 74-76, PageID.842-843 (Dkt. 7-10); 11/29/2012 Tr. at 72, PageID.930 (Dkt. 7-12).    Each officer unsurprisingly answered that they believed Petitioner was the perpetrator – but then each conceded that they based their belief on the circumstantial evidence and that there was no direct evidence linking Petitioner to the crime.    It is somewhat unusual for a defense attorney to invite a police officer to testify to his opinion that the defendant is guilty.    But here the point of asking the

questions and receiving the expected answers was for defense counsel to follow-up with questions about what the officers' beliefs were based on, and to highlight that there was no direct evidence of Petitioner's guilt. The question and follow-up provided a tactic by which defense counsel could repeatedly suggest to the jury that the prosecutor had no direct evidence of Petitioner's guilt and had therefore not proven Petitioner's guilt beyond a reasonable doubt. Though the tactic was somewhat unorthodox, it was not unreasonable for the Michigan Court of Appeals to conclude that it fell within the wide range of professionally competent assistance.

Next, Petitioner has failed to demonstrate that the failure to call witnesses in his defense constituted ineffective assistance of counsel. Petitioner first raised this claim in the Michigan Court of Appeals in his motion to remand for an evidentiary hearing. The state appellate court denied the motion: "Although defendant-appellant has included offers of proof with his motion to support his claim that his trial counsel was ineffective for failing to call certain witnesses, the offers of proof do not address or overcome the presumption that trial counsel rejected calling these witnesses for strategic reasons and that he otherwise pursued a valid trial strategy." Order, People v. Pyne, No. 314684 (Mich. Ct. App. Oct. 31, 2013).

Petitioner claims that Petitioner's father, Bernie Pyne, would have testified that the two-by-four believed missing from the garage was not in fact missing, and that he would have given testimony favorable to the defense regarding the victim's improving mental health around the time of the murder. Petitioner further alleges that Dr. Daniel Spitz would have testified that the wounds on Petitioner's hands were not caused by a two-by-four. First and foremost, Petitioner has failed to indicate that trial counsel was aware – or that through a more thorough investigation would have become aware – of this defense evidence. In particular, Bernie Pyne's affidavit does not assert that he informed defense counsel that he found the missing board, or that he told counsel

about his opinion of victim's improving mental health. Nor did Petitioner offer the state courts with any affidavit or other offer of proof from Dr. Spitz.

Furthermore, counsel elected to attack the sufficiency of the prosecutor's proofs by having them focus solely on what was missing from the prosecution case – the absence of any direct or forensic evidence pointing to Petitioner as the perpetrator. Presentation of defense witnesses risked having the jury weigh the two presentations against one another. The Supreme Court has recognized the validity of this type of defense. See Harrington, 562 U.S. at 109 ("To support a defense argument that the prosecution has not proved its case it sometimes is better to try to cast pervasive suspicion of doubt than to strive to prove a certainty that exonerates."). With respect to the failure to call Dr. Spitz, "[i]t should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" Burt v. Titlow, 571 U.S. 12, 23 (2013) (quoting Strickland, 466 U.S. at 689). Petitioner presented neither this Court nor the state courts with any evidence to support his assertion that Dr. Spitz would have testified favorably for the defense.

Finally, Petitioner's third allegation concerns counsel's failure to object to the admission of hearsay evidence that a two-by-four board was missing from the garage. Detective Zdavkovski testified that he returned to the Pyne home on June 8, 2011 with Detective Hiller to meet with Bernie Pyne and his attorney. 11/19/2012 Tr. at 258-259, PageID.633-634. Zdravkovski testified that Pyne said that a three-foot long two-by-four or one-by-four was missing from the work bench in the garage. Id. at 259-260, PageID.634. Pyne also informed the officers that a black box cutter was missing from the garage as well. Id. at 265, PageID.637. Detective Hiller testified that he heard Pyne tell Zdavkovski that the board was missing. 11/20/2012 Tr. at 109, PageID.695. Defense counsel did not object to the admission of Bernie Pyne's statements

regarding the missing board and box cutter.

The Michigan Court of Appeals found that this allegation was insufficiently briefed, but that in any event, "given the strong circumstantial evidence against defendant, he cannot demonstrate a reasonable probability that but for counsel's failure to object to the challenged evidence, the result of the proceeding would have been different." Pyne, 2015 WL 405723, at *6. The decision that Petitioner failed to demonstrate prejudice as a result of his counsel's failure to object to admission of the hearsay statements did not result in an objectively unreasonably application of the Strickland standard.

The case presented against Petitioner, though based entirely on circumstantial evidence, was relatively strong. Petitioner, who thought his former teacher Diane Needham was still out of town, chose to tell police that he was at her house transplanting flowers at about 1:30 p.m. on the day of the murder. Needham, however, was in fact in town, and she testified that the flowers were transplanted a few days before the murder. Moreover, Needham's neighbors did not see Petitioner's car at her house during the relevant time period. Further undermining Petitioner's account of his whereabouts on the day of the murder, neighbor Kip Conley testified that Petitioner's car was still in the driveway at around 1:40 p.m. Therefore, when Petitioner was confronted by the police with information that his mother had been murdered, Petitioner chose to lie about his whereabouts and activities during part of the narrow window of time when the crime was committed.

Additionally, Bernie Pyne found his wife's body at about 2:35 p.m., leaving less than an hour for someone other than Petitioner to have interacted with and then murdered the victim. In addition to the tight timeframe required for another person to have committed the crime, it is difficult to divine a motive for a third person given the lack of any indication of forced entry,

robbery, or sexual assault.

Further supporting the case against Petitioner was the testimony that Petitioner had a motive after becoming despondent upon learning that his father would not divorce the victim, the fact that the injuries on his hands were not caused by throwing a pallet as he claimed, multiple witnesses testifying that they saw Petitioner feign crying upon hearing that his mother was dead, and police officers testifying to Petitioner's unusually calm demeanor upon learning that his mother was not only dead but had been murdered. Though the evidence was purely circumstantial, it strongly indicated that Petitioner was the perpetrator of the murder.

Against this backdrop, the inclusion of hearsay evidence that a board was missing from the garage did not substantially add to the case that Petitioner was the perpetrator. The testimony certainly strongly suggested that an item from the garage was used to commit the crime. But that in itself is not a surprising fact, nor does it point to Petitioner rather than another individual as being the perpetrator. It only suggests that whoever murdered the victim found a weapon in the garage – a fact that does not point to any particular person as the perpetrator. It was not unreasonable for the Michigan Court of Appeals to conclude that counsel's failure to object to the hearsay evidence did not result in Strickland prejudice.

Accordingly, none of Petitioner's allegations of ineffective assistance of counsel merits relief.

### C. Sufficiency of the Evidence

Petitioner's fourth claim asserts that the trial court erred in denying Petitioner's motion for a directed verdict as to the first-degree murder charge where there was insufficient evidence admitted at trial to demonstrate the elements of premeditation and deliberation.

The critical inquiry on review of the sufficiency of the evidence to support a criminal

conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). A reviewing court is not required to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 318-319 (internal citations omitted) (emphasis in original). Furthermore, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326.

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. For a federal habeas court reviewing a state court determination that sufficient evidence was presented, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under AEDPA." Id.

First, to the extent that Petitioner argues that the judge should have directed a verdict on the original first-degree premeditated murder charge, Petitioner was convicted of the lesser

included offense of second-degree murder, rendering any error in the denial of the motion for a directed verdict harmless. The Supreme Court has never held that the submission of a charge upon which there is insufficient evidence violates a defendant's constitutional rights where the defendant is acquitted of that charge. Long v. Stovall, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006). Furthermore, a number of cases have held that the submission of a criminal charge to a jury constitutes harmless error where the habeas petitioner is acquitted of that charge. Daniels v. Burke, 83 F.3d 760, 765, n.4 (6th Cir. 1996). In light of the fact that Petitioner was acquitted of the first-degree premeditated murder charge and found guilty of the lesser included offense of second-degree murder, any error in submitting the first-degree premeditated murder charge to the jury does not entitle petitioner to habeas relief. See King v. Trippett, 27 F. App'x 506, 510 (6th Cir. 2001).

In any event, sufficient evidence was presented to demonstrate that the murder was committed with premeditation and deliberation. To obtain a conviction for first-degree premeditated murder in Michigan, the prosecutor must prove that a defendant's intentional killing of another was deliberated and premeditated. See Scott v. Elo, 302 F. 3d 598, 602 (6th Cir. 2002). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. See Johnson v. Hofbauer, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001). Premeditation may be proven through evidence of the following factors: (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide. Cyars v. Hofbauer, 383 F.3d 485, 491 (6th Cir. 2004).

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough

to afford a reasonable man time to subject the nature of his response to a 'second look.'" See Williams v. Jones, 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." Alder v. Burt, 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." People v. Berthiaume, 229 N.W.2d 497, 500 (Mich. Ct. App. 1975).

Here, the circumstances of the killing strongly indicate a premeditated and deliberate murder. The blood spray on the surfaces around the body indicated that the victim was knocked down and beaten in the back of the head, and then her throat was slashed after she was rendered helpless. 11/26/2012 Tr. at 52-57, 181-186 PageID.723-726, 788-790 (Dkt 7-9). The location of the wounds on the victim and blood splatters indicated that after being beaten by an edged object in the back of the head, the victim was rolled over and slashed repeatedly in the neck. Id. at 200-204, PageID.797-799. The nature and extent of the wounds indicated a case of "overkill." 11/27/2012 Tr. at 6-7, PageID.808-809. A medical examiner opined that the victim was struck in the back of the head between four and nine times with an edged object such as a two-by-four. 12/11/2012 Tr. at 26, 70-78, PageID.1224, 1246-1250. The blows to the back of the head resulted in multiple skull fractures causing broken fragments of the skull and hemorrhaging in the brain. Id. at 28, PageID.1225. These blows rendered her unconscious. Id. at 32-33, 1227-1228. The unconscious victim's throat was then slashed with a sharp object, cutting her trachea and severing blood vessels in the neck. Id. at 51-53, 65, PageID.1237-1238, 1244.

Given this evidence, a rational trier of fact could find beyond a reasonable doubt that the perpetrator of the murder had an opportunity to take a "second look" between the time he rendered

the victim immobilized and unconscious after striking her in the back of the head several times and the time he rolled her still living body over and slashed her neck. As indicated above, under state law, premeditation and deliberation may occur in a matter of seconds. This case does not involve an instantaneous act such as a single fatal gunshot. Rather, the circumstances of the killing indicate a brutal beating and slashing of a hapless victim that spanned enough time between the initial thought to strike and the final fatal slashes that was long enough to afford a reasonable person time to subject the nature of his actions to a second look. Sufficient evidence of premeditation and deliberation was presented at trial to allow the charge of first-degree murder to go to the jury.

### IV. Certificate of Appealability and Proceeding In Forma Pauperis on Appeal

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; Castro v. United States, 310 F.3d 900, 901 (6th Cir. 2002). It

would not be reasonably debatable among jurists that Petitioner's claims are completely devoid of merit. The Court will, therefore, deny a certificate of appealability.

Although the Court denies a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant in forma pauperis status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate the Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id. at 764-765.

## IV. CONCLUSION

For the reasons stated above, the Court denies the petition (Dkt. 1), denies a certificate of appealability, and grants permission to proceed in forma pauperis on appeal.

SO ORDERED.

Dated: October 19, 2018          s/Mark A. Goldsmith
       Detroit, Michigan        MARK A. GOLDSMITH
                                United States District Judge

### CERTIFICATE OF SERVICE
The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 19, 2018.
                                s/Karri Sandusky
                                Case Manager